Donna Perkins NELSON, Juanita Harmon, Deborah D. Chandler, and Brenda Arrington, Plaintiffs,

v.

Richard H. BRYAN, Brian McKay, William D. Swackhamer, Vernon G. Housewright, Bert Koon, Brenda Burns, John Ignacio, Judy King and Jessie Walsh, Defendants.

No. CV–R–83–230–ECR.

United States District Court,
D. Nevada.

March 27, 1985.

Lawrence J. Semenza, Reno, Nev., for plaintiffs.

Brian McKay, Atty. Gen. by Dan R. Reaser, Deputy, Carson City, Nev., for defendants.

## MEMORANDUM DECISION
## AND ORDER

EDWARD C. REED, Jr., District Judge.

The defendants have moved for summary judgment. The plaintiffs have acknowledged that defendants Bryan, McKay and

Swackhamer, who have been sued in their capacity as members of the State Board of Prison Commissioners, are not properly subject to this lawsuit. Therefore, the following discussion involves defendants Housewright, the Director of the Nevada Department of Prisons, Koon, the Warden of the Nevada Women's Correctional Center (NWCC), Burns, a Lieutenant assigned to NWCC at all times here material, Ignacio, the Deputy Warden of the Nevada State Prison, and King and Walsh, Counselors assigned to NWCC at all times here material.

The complaint is based on 42 U.S.C. § 1983. It alleges that the plaintiffs, who are inmates of NWCC, were placed in administrative segregation and maintained in such restrictive custody for approximately three months in violation of their procedural due process rights. Specifically, they complain of not being afforded a timely opportunity to: (1) make statements or call witnesses in their own behalf, (2) confront and question adverse witnesses, (3) be represented by inmate counsel or impartial staff members, (4) prepare for hearing, and (5) have their hearings tape-recorded.

On March 3, 1983, an emergency head count was conducted at NWCC. This necessitated a lockdown during which all inmates were confined to their assigned housing. Immediately, five of the inmates were transferred to correctional institutions in other jurisdictions, five (including plaintiffs Chandler and Arrington) were moved to the nearby Douglas County correctional facility, and eight (including plaintiffs Nelson and Harmon) were placed in administrative segregation housing within NWCC. Between March 3rd and 5th the entire remaining inmate population of approximately one hundred thirty-two women and all housing areas were searched. Among the items found were marijuana and paraphernalia, metal objects that could be used for or fashioned into weapons, electrical appliances in the possession of inmates other than their rightful owners, unauthorized identifications and excessive amounts of money. The lockdown was precipitated by the findings of an investigation

consisting of interviews with inmates, confidential informants and staff members. The indications were that some eighteen inmates, including the plaintiffs, were associating together to engage in drug trafficking (with the aid of visitors and a local business). In addition, the investigation revealed that the eighteen inmates were engaging in homosexual activity, were abusing work release programs by trafficking in contraband, were intimidating other inmates to obtain drugs, money and other property, and were assaulting other inmates in connection therewith. Further, a confidential informant advised, on March 2d, that certain inmates were going to meet on March 5th to plan a prison strike or disturbance for March 14th. The administrative segregation transfers were deemed by defendants Housewright and Koon to be an appropriate way of separating the disruptive inmates from the general population of NWCC.

No contraband was discovered in the plaintiffs' living quarters nor on their persons, although evidence of drugs was found in plaintiff Chandler's urine. No disciplinary charges were pressed against any of the plaintiffs.

On March 3rd, at the commencement of the lockdown, each plaintiff was taken to an office at NWCC for a "special classification hearing." They were there informed verbally that they were charged with predatory gang activities, pressuring other inmates for sexual favors, and drug solicitation activities. They were given no opportunity to speak in their own behalf. All four plaintiffs were classified to administrative segregation for six months, with weekly reviews to be made of their classification. Written notices of the classification decisions were provided the four plaintiffs between five and eight days after their transfers. Second classification hearings were accorded them within the same time interval. They were there permitted to discuss and state their views as to the propriety of classifying them to administrative segregation. Subsequent review hearings were conducted for each of them at

one-to two-week intervals for a month or so, then at two-to-three week intervals. All were returned to the general population of NWCC on or before June 1st.

■ A state creates a constitutionally protected liberty interest by requiring its decisionmakers to base their decisions on objective and defined criteria. *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). Nevada law does so limit the use of administrative segregation. Nevada Department of Prisons Procedure No. 205(7)(a) reads, in pertinent part:

"Inmates that are placed in administrative segregation or lockup, shall not be placed on this status as punishment, but this designation shall be used under the following circumstances:

—to allow time for classification of inmates;

—maintain order in the institution; or

—to protect inmates;

—to assess the possibility of re-programming in less secure housing."

Since an inmate may not be placed in administrative segregation unless one of the specified circumstances exists, a protected liberty interest has been created.

■ Nevada Department of Prisons Procedure No. 205(8)(a)(2) reads:

"In those instances where an inmate's level of custody is considered for an increase, a written notice is required. The notice shall indicate to the inmate that he/she has the right to be assisted by a counselor or staff member of the inmate's choosing, at the classification meeting. When assistance is requested, it shall be given at a reasonable period prior to the meeting."

This procedural regulation does not place any significant limitations on the discretion of the decisionmakers but, rather, merely provides an outline of relevant considerations; therefore it does not give rise to a constitutionally protected interest in the procedure. *Goodisman v. Lytle,* 724 F.2d 818, 820–1 (9th Cir.1984); *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 871, 74 L.Ed.2d

675 (1983). As a consequence, any violation of the regulation would not serve as the basis for a § 1983 action in a federal court. The plaintiffs herein cannot successfully resist the instant motion for summary judgment solely on the ground that Procedure No. 205(8)(a)(2) was not complied with by the defendants.

■ In light of Procedure No. 205(7)(a)'s specific admonition that an inmate may not be placed in administrative segregation as punishment, a claim for relief under § 1983 would be established if the plaintiffs showed that they were so classified as punishment. *Soto v. City of Sacramento,* 567 F.Supp. 662, 690 (E.D. Cal.1983). The plaintiffs point out that they originally were "sentenced" to six months in such classification, rather than an indefinite period until the circumstances had changed. Also, they emphasize that the predatory gang activities which were given as reasons for their segregation would subject them to disciplinary action. None of them was charged in disciplinary proceedings. The defendants, however, have documented, in their affidavits and exhibits in support of their motion, that their activities were intended to maintain order in NWCC and protect the other inmates there. The propriety of utilizing administrative segregation to accomplish such aims is recognized. *See Hewitt v. Helms,* 103 S.Ct. at 869–870. In such a situation the plaintiffs must make an affirmative showing to create a genuine issue as to the fact of the defendants' intent. *See Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,* 739 F.2d 1434, 1436 (9th Cir. 1984). This the plaintiffs have not done; instead, in their opposing papers they have emphasized the procedural due process rights of an adversarial hearing, an opportunity to present witnesses, the assistance of inmate counsel or staff members, and advance notice that would give them time to prepare.

The plaintiffs were not constitutionally entitled to hearings before their transfers, but only within a reasonable time thereafter. *Hewitt v. Helms,* 103 S.Ct. at 872,

874 n. 8. The hearing itself need be only an informal, nonadversary evidentiary review. *Id.* at 874. The inmate must receive some notice of the charges against her and an opportunity to present her views to the officials charged with deciding whether administrative segregation is called for. *Id.* If this procedure is followed and the decisionmakers review the evidence, the Due Process Clause is satisfied. *Id.* Such a review occurring less than a month after the initial decision to transfer the inmate to administrative segregation was deemed sufficient to dispel any notion that the transfer was a pretext in *Hewitt.* *Id.* at 874–5 n. 9.

The controlling law as set forth in *Hewitt* having been complied with by the defendants, it must be concluded that there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law. *See Zoslaw v. MCA Distributing Corp.,* 693 F.2d 870, 883 (9th Cir.1982).

IT IS, THEREFORE, HEREBY ORDERED that the Clerk shall enter summary judgment in favor of all the defendants and against all of the plaintiffs.